UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 1:12-cr-80 |
| v. | ) |
| | ) *Collier / Lee* |
| DARIEN HOUSTON | ) |

**REPORT AND RECOMMENDATION**

Defendant Darien Houston filed a motion for permission to file a motion for a *Franks*[1] hearing out of time [Doc. 30], which was granted [Doc. 35]. Now pending before the Court is Defendant's motion for a hearing pursuant to *Franks* [Doc. 36], which will be construed as including a motion to suppress [*see* Doc. 38]. The government opposes the motion [Doc. 34]. An evidentiary hearing on Defendant's motion to suppress was held November 21, 2012. For the reasons stated herein, I **RECOMMEND** that the motion to suppress be **DENIED**.

I.    BACKGROUND

Chattanooga Police Department ("CPD") Officer William McMillan's affidavit ("Affidavit") [Defendant's Exhibit 1] was used to obtain a Search and Seizure Warrant ("Warrant") [Defendant's Exhibit 2] for the search of a home where Defendant stayed. The Warrant was issued by a state judge or judicial commissioner on May 29, 2012 at 6:37 in the evening.

   A.    The Affidavit

The Affidavit states, in relevant part, as follows:

> 2. During my service, I have had specialized training in and experience with the world of controlled substances, their unlawful

---

[1] A hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) is commonly referred to as a *Franks* hearing and will be referred to as such herein. Defendant's motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 35]. Defendant's "standing" to bring the motion was not contested by the government.

use, and the traffic therein. During this training and experience, I have learned that when controlled substances are illegally used, manufactured, and trafficked in, other supporting items and materials are usually present in addition to the controlled substances themselves. These supporting items commonly associated with the use of and traffic in controlled substances include, but are not limited to . . . weapons (used to protect the controlled substance(s) or proceeds); . . .
. . .
5. The crime being investigated is the possession for resale of schedule VI controlled substances to wit: marijuana in and unlawful possession of firearms in Hamilton County, Tennessee.

6. On May 27th 2012, at unknown hours, I Officer McMillan was on a disorder call when an unknown female ran inside the residence I was in and stated a Vice Lord gang member pointed a gun at another rival gang member.

7. On May 27th 2012, at unknown hours, police were dispatched to a call inside East Lake courts where there were shots fired and shell casings found on a residence front porch. In regards to this incident a informant called my personal cell phone and told me Vice Lords were shooting and rival gang member.

8. On May 28th 2012 at 10:51 AM a reliable informant called my personal phone and told me he was inside 2233 E 25th St Ct and saw several guns inside the residence and was told by parties in the residence that one of the guns was from the prior shots fired call. He also stated that party of interest with possible name of Darrel is a leader of the Vice Lord's and that the other parties inside the residence were Vice Lord Gang members.

9. This informant has been used in several narcotic search warrants that lead to several felony drug and weapon arrest. Also he has been used in several cases where money and vehicles had been seized.

Based upon the foregoing, your affiant has probable cause to believe and do believe that there is currently located at 2233 E 25th St Ct in the city of Chattanooga, within Hamilton County, Tennessee, property which constitutes evidence of the commission of a criminal offense, contraband, the fruits of crime and / or property designed or intended for use or which is or has been used as the means of committing violations of Tennessee State drug laws. I hereby request a warrant for search of the above residence to include all persons,

2

containers, out buildings and motor vehicles of persons located on the premises. I request that the warrant authorize officers to enter the residence and search for documents and records pertaining to those criminal activities.

[Defendant's Exhibit 1].

### B. The Warrant

The Warrant found "probable cause to believe that evidence and proceeds from the crime of unlawful possession, but not limited to, of a firearm and marijuana" would be found at the identified residence and authorized the search for, and seizure of, the following:

> l. Controlled Substances
>
> 2. Paraphernalia associated with controlled substances
>
> 3. Proceeds from the sale of controlled substances
>
> 4. Documents and all items showing who owns and/or controls the above-described property or showing a history of the sale of controlled substances
>
> 5. In addition, all items known to you to be evidence of criminal activity
>
> 6. Any unlawful weapons
>
> You are also to search for and seize, if found, supporting items commonly associated with the use, manufacture, or traffic in controlled substances to include, but not limited to, drug paraphernalia as defined in TCA § 39-17-402(12): scales and packaging material suitable for the controlled substance(s); records and notes of controlled substances transactions; money (proceeds of or capital for controlled substance transactions); weapons (used to protect the controlled substance or proceeds); electronic devices suitable for use in controlled substance transactions, recordings of such transactions, or electronic devices, suitable for avoiding law enforcement.

[Defendant's Exhibit 2].

3

### C. Records

Defendant relies on several exhibits: (1) a CPD Detail Report, which indicates the disorder call referenced in paragraph six of the Affidavit occurred on May 28, 2012 at 17:23:12, not May 27 as stated in the Affidavit [Defendant's Exhibit 3]; (2) an Incident Report about the disorder call, which notes a different address and 21:21 time of occurrence and states upon Officer McMillan's arrival, "police were advised the parties left the scene. No further," [Defendant's Exhibit 4]; (3) a record of Officer McMillan's personal cell phone calls, which indicates the call referenced in paragraph 8 of the Affidavit was received at 10:51 a.m. on May 29, 2012, not May 28 as stated in the Affidavit [Defendant's Exhibit 5]; and (4) an e-mail sent from the officer who responded to the shooting incidents referenced in paragraph 7 of the Affidavit, which includes a report of a shooting incident on May 27, 2012 at 23:59 and another shooting incident several hours later on May 28, 2012 at 06:17 [Defendant's Exhibit 6].

### D. Testimony

During the evidentiary hearing on November 21, 2012, Defendant presented the testimony of Bill DiPillo, an investigator with Federal Defender Services, and the Government offered testimony from Officer McMillan. The testimony at the hearing was as follows.

#### 1. Mr. DiPillo

Mr. DiPillo described his investigation into the disorder call incident referenced in paragraph 6 of the Affidavit, noting the date, address, and time on the incident report [Defendant's Exhibit 4] were all different from the detailed transcript of the 911 call [Defendant's Exhibit 3]. According to the transcript, the call to 911 occurred on May 28, not May 27, and came in at approximately 5:23 p.m., not 9:21 p.m. as stated on the incident report. The address was 2233 E 27th St. Ct., not 2213

4

E 27th St. Ct. Also, there was no mention in Officer McMillan's incident report of a female running into Ms. Moore's residence or the Vice Lords.

As part of his investigation, Mr. DiPillo spoke to the woman who called 911, Kuchava Moore. Ms. Moore stated she and her boyfriend were having problems and she called the police to have her boyfriend removed from her apartment. By the time the police arrived, her boyfriend was gone. Ms. Moore said there was another female in her residence at the time, but Ms. Moore told Mr. DiPillo that no other female ran into her residence and made any statement about the Vice Lords. Ms. Moore also said neither she nor the other female in her home made any such statement. Mr. DiPillo did not speak to the other female and he did not ask Ms. Moore if the other female talked to Officer McMillan. Mr. DiPillo acknowledged it was possible the other female talked to Officer McMillan without being overheard by Ms. Moore. Mr. DiPillo asked Ms. Moore to testify at the hearing, but she told him she would not because she feared eviction by the Chattanooga Housing Authority if she testified.

### 2. Officer McMillan

Officer McMillan is a five-year veteran of the CPD and currently assigned as a patrol officer in the Fox Zone (East Lake area) working the 3:00 p.m. to 11:00 p.m. shift. When he reported to Ms. Moore's residence for the disorder call described in paragraph 6 of his Affidavit, the boyfriend was gone, Ms. Moore seemed fine, and she would not tell him her boyfriend's name. While he was talking to Ms. Moore, a female came through Ms. Moore's back door very quickly in a panic. Officer McMillan turned his attention to, and walked back toward, the female, who stated a member of the Vice Lords pointed a gun at a rival gang member. Officer McMillan had his back to Ms. Moore as he spoke to the other female, so he did not know if Ms. Moore remained in the living room

5

while he talked with the female, but he was sure Ms. Moore had remained in the residence. After he left Ms. Moore's residence, Officer McMillan went through the area in an attempt to check out the female's story, but he did not come across anything or anyone concerning her claim.

Officer McMillan's phone records, which were obtained through discovery, were also introduced at the hearing [Defendant's Exhibit 5]. Officer McMillan was not asked to identify in the phone records which call was from the informant specified in paragraph 7 of the Affidavit, although there were several calls listed on both May 27 and May 28 in the records. The call from the informant specified in paragraph 8 of the Affidavit was underlined in the phone records and shows the call occurred on May 29, not May 28.

Also introduced were two shooting incident reports sent by email from CPD Officer Martin Penny, an officer involved in the investigation of the shots-fired incidents. The email was sent to various officers to advise them of the shootings and to warn them to take caution around known gang members. The event described in paragraph 7 of Officer McMillan's Affidavit aligned with a shooting incident that occurred on May 27 at 11:59 p.m., but there was no information in either incident report about shell casings found on a front porch as mentioned in the Affidavit. The second shooting incident report, detailing a shooting on May 28 at 6:17 a.m., included an utterance by an arrested suspect that the shooting occurred because the Gangster Disciples were at war with the Athens Park Bloods. There was no mention of the Vice Lords in either incident report or the email.

Officer McMillan heard about the first shooting incident (on May 27 at 11:59 p.m.) from the informant some time after it happened as outlined in paragraph 7 of the Affidavit. He also heard about this shooting from the officers dispatched to the scene. Officer McMillan knew a second shooting had occurred because he heard officers talking about it, but he did not know the details

6

about the second shooting until he received the email detailing both incidents.

Officer McMillan received the call from the informant described in paragraph 8 of the Affidavit. The informant told Officer McMillan all the information included in the Affidavit plus stated the occupants of the identified residence were smoking marijuana. Officer McMillan forgot to include the information about marijuana in his Affidavit because of his focus on firearms. Officer McMillan had used the informant referenced in the Affidavit approximately five times over some two years, the informant's information had resulted in convictions, and other officers had used this informant additional times.

Officer McMillan acknowledged the Affidavit contained date errors, including misdating the informant's call in paragraph 8 even though Officer McMillan received the call the morning of May 29, only hours before drafting the Affidavit. Officer McMillan stated he was off on his dates by one day in the Affidavit because he was busy and hurried while drafting the Affidavit, but there was nothing intentionally or recklessly false in the Affidavit.

## II. ANALYSIS

### A. Standards

In order to be entitled to a *Franks* hearing, a defendant must make a dual showing. First, the defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit . . . ." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Second, the offending information must be "necessary to the finding of probable cause;" if the offending information is excluded and probable cause still remains, a *Franks* hearing is not required. *Id.* at 156. The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has elaborated:

7

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth. He must accompany his allegations with an offer of proof. Moreover, he also should provide supporting affidavits or explain their absence. If he meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause.

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citations omitted).

If a defendant makes this preliminary showing and is granted a *Franks* hearing, he or she must show by a preponderance of the evidence that the affiant intentionally or recklessly included false statements, which are necessary to the probable cause finding, in the affidavit. *Franks*, 438 U.S. at 156; *Bennett*, 905 F.2d at 934. The falsehood must be material, *United States v. Ayen*, 997 F.2d 1150, 1152 (6th Cir. 1993), and courts are to examine the totality of the circumstances in determining whether probable cause exists, *United States v. Hammond*, 351 F.3d 765, 771 (6th Cir. 2003). If the defendant successfully shows, by a preponderance of the evidence, the affiant intentionally or recklessly included false statements in the affidavit, which were necessary to the probable cause finding, the evidence gained as a result of the search must be suppressed. *Franks*, 438 U.S. at 156; *Bennett*, 905 F.2d at 934.

### B. Defendant Did Not Meet His Burden

Over the objection of the government, a *Franks* hearing was held in this matter. The government conceded the Affidavit misstates the dates of two events – each by one day – but notes the Warrant was signed on May 29, 2012 at 6:37 p.m., after both of the misdated events took place. The government argues Defendant has not shown Officer McMillan misstated the dates of the events with reckless disregard for the truth, noting Officer McMillan would have no reason to purposefully

8

misstate the dates as being earlier because the correct dates were closer in time to obtaining the warrant.

Defendant concedes that the misstatement of the dates alone would not result in a lack of probable cause, so it is not necessary to belabor the point. I **FIND** the mere misstatement of the dates is simply not material. *See e.g.*, *United States v. Hill*, 142 F.3d 305, 310-11 (6th Cir. 1998) (inaccuracies in dates of surveillance did not negate probable cause for search); *United States v. Charles*, 138 F.3d 257, 263-64 (6th Cir. 1998) (defendant failed to prove errors in the affidavit resulted from deliberate or reckless disregard for the truth where court properly found errors resulted from careless drafting); *U.S. v. Mick*, 263 F.3d 553, 564 (6th Cir. 2001) (confusion on dates in affidavit "does not rise to the level of deliberate or reckless misstatements as required by *Franks*.").

The remaining issue is whether there are any false statements in the Affidavit that, either alone or in combination with the misstated dates, might result in a lack of probable cause for a search warrant for firearms evidence. I **FIND** failed to establish by a preponderance of the evidence that a material false statement – made knowingly and intentionally or with reckless disregard for the truth – was included in the Affidavit or that the offending information was necessary to the finding of probable cause.

### 1. Paragraph 6

With respect to paragraph 6 of the Affidavit, the government concedes the Affidavit incorrectly states the call occurred on May 27 when it actually occurred on May 28, but argues paragraph 6 of the Affidavit contains no other false information. True, Defendant presented evidence that although another female was inside Ms. Moore's residence at the time of the disorder call, Ms. Moore claims no female ran inside her residence while the officer was present and there

9

was no mention of Vice Lords gang activity at all in her presence. While Mr. DiPillo testified credibly about what Ms. Moore told him, she was not under oath at the time and she not subject to cross examination. In addition, Ms. Moore's statement reflects there were two women present and she may not have been privy to statements made to Officer McMillan by the other female.

The testimony of Officer McMillan was consistent with what he placed in his Affidavit. He credibly testified he simply got the dates wrong in his Affidavit as a result of the press of police business and perhaps some carelessness due to being hurried. While Officer McMillan's report of the disorder call certainly could have been better in hindsight (as it does not mention the unknown woman or her report of Vice Lords activity), Defendant did not demonstrate paragraph 6 contains a material false statement – just an incorrect date. Thus, I **FIND** Defendant did not prove paragraph 6 of the Affidavit contains false statements that must be stricken from the Affidavit. Even if paragraph 6 is stricken in its entirety, however, I **FIND** there is ample probable cause for the issuance of the Warrant for evidence of gun-related crimes in the remaining portions of the Affidavit.

2. Paragraph 7

At 8:51 a.m. on May 28, 2012, an email was sent by Officer Penny to certain CPD officers, including officers in the Fox Zone where Officer McMillan was assigned, advising of the two shooting incidents: one just a minute prior to midnight on May 27, 2012 and one about six hours later in the early morning of May 28, 2012. With respect to the second shooting incident, Officer Penny's email notes an arrested suspect claimed a gang war was brewing between the Gangster Disciples and the Athens Park Bloods, with no mention of the Vice Lords. However, Officer McMillan testified he did in fact receive a call from an informant, as stated in paragraph 7, and the

10

informant told him Vice Lords were shooting at rival gang members with respect to the midnight shooting incident. Officer McMillan credibly testified all information contained in paragraph 7 of the Affidavit is correct based on information he gathered from the informant and other police officers. Although not much testimony was offered about whether shell casings were found on a resident's front porch, and the shell casings apparently are not mentioned in the police reports made available to Defendant, no proof was offered to suggest shell casings actually were not found or that shots actually were not fired. In short, Defendant failed to prove *any* of the statements in paragraph 7 of the Affidavit are false since the first shots-fired call took place at 11:59 p.m. on May 27, 2012.

        **3.**        **Paragraphs 8 and 9**

With respect to paragraph 8, Defendant principally relies on the arrested suspect's claim that the Gangster Disciples were at war with the Athens Park Bloods. While the arrested and self-proclaimed Gangster Disciple gang member did not indicate the Vice Lords were involved in the shooting in his utterance, Defendant did not meet his burden to show any material aspect of paragraph 8 is false. Defendant questions why the date in this paragraph was wrong since the informant's call took place the same day the Warrant was obtained, however, Defendant presented no proof that the *substance* of the call was falsely reported in the Affidavit. While Defendant contends in his pleadings that the informant was one of two individuals caught for a crime who cooperated to avoid charges, he offered no proof that any of the statements in paragraph 9 of the Affidavit about the reliability of the informant were false. In short, the statements in the Affidavit about the informant's call and the reliability of the informant were not shown to be false or even seriously called into question.

Officer McMillan testified he accidently failed to include in the Affidavit that the informant

11

also told him the parties inside the residence were smoking pot. As a result, the government concedes the Affidavit does not provide probable cause for a search for drug evidence, but claims the Affidavit provides ample probable cause for a search for guns. Defendant has not specifically contended the Affidavit fails to provide probable cause for a search for firearms-related evidence. Indeed, the Affidavit states a reliable informant saw guns in the house and that people in the house were claiming that one of the guns was used in a recent shooting. The warrant properly authorized a search for weapons as the Affidavit provides probable cause to search for evidence of firearms-related crimes, specifically the shooting.

### III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[2] that Defendant's motion to suppress [Doc. 36] be **DENIED**.

                                               s/ *Susan K. Lee*
                                               SUSAN K. LEE
                                               UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are "frivolous, conclusive or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation marks and citation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).