UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:12-CR-80 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| DARIEN HOUSTON | ) | |

## MEMORANDUM

Defendant Darien Houston ("Defendant") filed a motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (Court File No. 36),[1] which was referred to United States Magistrate Judge Susan K. Lee. The magistrate judge construed Defendant's motion for a *Franks* hearing to also include a motion to suppress. The Government filed a response in opposition to Defendant's motion (Court File No. 34). The magistrate judge held a *Franks* hearing on Defendant's motion and subsequently filed a report and recommendation ("R&R") recommending the underlying motion to suppress be denied (Court File No. 41). Defendant timely objected (Court File No. 42) and the Government filed a response (Court File No. 43). For the following reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 41) and **DENY** Defendant's motion to suppress (Court File No. 36).

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.    Factual Background

_____

[1] Defendant initially filed a motion seeking leave to file a motion for a *Franks* hearing out of time (Court File No. 30), which the Court granted (Court File No. 35).

[2] The Court incorporates those portions of the magistrate judge's recitation of the facts to which objections have not been made, and only recounts the facts underlying the issues addressed in this memorandum.

On November 21, 2012, the magistrate judge held an evidentiary hearing at which both the Government and Defendant offered evidence. The Government offered the testimony of Chattanooga Police Department ("CPD") Officer William McMillan and Defendant offered the testimony of Federal Defender Services Investigator Bill DiPillo. Defendant also presented a number of exhibits including (1) the affidavit in support of the search warrant (Def.'s Ex. 1); (2) the search and seizure warrant (Def.'s Ex. 2); (3) a CPD detail report (Def.'s Ex. 3); (4) a CPD incident report entered by Officer McMillan (Def.'s Ex. 4); (5) Officer McMillan's itemized cell phone statement (Def.'s Ex. 5); and (6) an email sent from Officer Martin Penny, the officer who responded to the shootings referenced in paragraph 7 of the affidavit (Def.'s Ex. 6).

Because Defendant questions the veracity of the statements contained in Officer McMillan's affidavit in support of the search warrant, the Court finds it useful to first recite the relevant portions of those documents here, as did the magistrate judge in the R&R.

The affidavit, which was submitted on May 29, 2012, reads in pertinent part:

2.     During my service, I have had specialized training in and experience with the world of controlled substances, their unlawful use, and the traffic therein. During this training and experience, I have learned that when controlled substances are illegally used, manufactured, and trafficked in, other supporting items and materials are usually present in addition to the controlled substances themselves. These supporting items commonly associated with the use of and traffic in controlled substances include, but are not limited to . . . weapons (used to protect the controlled substance(s) or proceeds) . . . .

. . .

4.     The location to be searched in this case is a residence located at 2233 E 25th St Ct . . . .

5.     The crime being investigated is the possession for resale of schedule VI controlled substances to wit: marijuana in and unlawful possession of firearms in Hamilton County, Tennessee.

2

6.   On May 27th 2012, at unknown hours, I Officer McMillan was on a disorder call when an unknown female ran inside the residence I was in and stated a Vice Lord gang member pointed a gun at another rival gang member.

7.   On May 27th 2012, at unknown hours, police were dispatched to a call inside East Lake courts where there were shots fired and shell casings found on a residence front porch. In regards to this incident a informant called my personal cell phone and told me Vice Lords were shooting and rival gang member.

8.   On May 28th 2012 at 10:51 AM a reliable informant called my personal cell phone and told me he was inside 2233 E 25th St Ct and saw several guns inside the residence and was told by parties in the residence that one of the guns was from the prior shots fired call. He also stated that party of interest with possible name of Darrel is a leader of the Vice Lord's and that the other parties inside the residence were Vice Lord Gang members.

9.   This informant has been used in several narcotic search warrants that lead to several felony drug and weapon arrest. Also he has been used in several cases where money and vehicles had been seized.

Based upon the foregoing, your affiant has probable cause to believe and do believe that there is currently located at 2233 E 25th St Ct, in the city of Chattanooga, within Hamilton County, Tennessee, property which constitutes evidence of the commission of a criminal offense, contraband, the fruits of crime and/or property designed or intended for use or which is or has been used as the means of committing violations of Tennessee State drug laws. I hereby request a warrant for search of the above residence to include all persons, containers, out buildings and motor vehicles of persons located on the premises. I request that the warrant authorize officers to enter the residence and search for documents and records pertaining to those criminal activities.

(Def.'s Ex. 1).

That same day, at 6:37 p.m., a search and seizure warrant was issued (Def.'s Ex. 2). The judicial officer noted Officer McMillan had shown there was "probable cause to believe that evidence and proceeds from the crime of unlawful possession, but not limited to, of a firearm and marijuana is located at 2233 E 25th St Ct, in the city of Chattanooga, within Hamilton County, Tennessee" (*id.*). The warrant gave officers authority to search for and seize the following:

3

1.    Controlled substances

2.    Paraphernalia associated with controlled substances

3.    Proceeds from the sale of controlled substances

4.    Documents and all items showing who owns and/or controls the above-described property or showing a history of the sale of controlled substances

5.    In addition, all items known to you to be evidence of criminal activity

6.    Any unlawful weapons

You are also to search for and seize, if found, supporting items commonly associated with the use, manufacture, or traffic in controlled substances to include, but not limited to . . . weapons (used to protect the controlled substance or proceeds) . . . .

(*id.*).

At the evidentiary hearing before the magistrate judge, Mr. DiPillo testified about his investigation into the disorder call that Officer McMillan responded to and referenced in paragraph 6 of the affidavit. Mr. DiPillo noted several discrepancies between the transcript of the 911 call (Def.'s Ex. 3) and Officer McMillan's incident report (Def.'s Ex. 4) calling into question the accuracy and truthfulness of statements made in the affidavit. In particular, he noted (1) the 911 call that Officer McMillan responded to occurred on May 28, 2012, at approximately 5:23pm rather than May 27, 2012, at approximately 9:21 p.m. as reported; (2) the call was made from 2233 E 27th Street Ct rather than 2213 E 27th St Ct; and (3) Officer McMillan failed to mention that a woman ran into the residence or that someone mentioned the Vice Lords in his incident report.

Upon further investigation, Mr. DiPillo learned from the woman who made the 911 call, Kuchava Moore, that another woman was at her residence at the time of the call. Ms. Moore claims that neither she nor the other woman in her residence mentioned the Vice Lords. She also claims that she did not see anyone run in the apartment. With that said, Mr. DiPillo did not speak to the other

4

woman and he admitted there was certainly a possibility that the other woman may have spoken to Officer McMillan without being heard by Ms. Moore. According to Mr. DiPillo, Ms. Moore stated she would not testify at the hearing because she was afraid she might be evicted by the Chattanooga Housing Authority as a result.

Officer McMillan testified as the Government's witness. Officer McMillan has worked for CPD for five years and is currently a patrol officer. He works in the East Lake Courts area during the 3:00 p.m. to 11:00 p.m. shift. Officer McMillan responded to the disorder call at Ms. Moore's residence. Officer McMillan acknowledged that several of the dates contained in his affidavit were approximately one day off--for example, he responded to the disorder call on May 28 not May 27 as written in the affidavit--which he attributed to being busy and rushed while drafting the affidavit. Based on Officer McMillan's phone records (*see* Def.'s Ex. 5) introduced at the hearing, it also appears the date of the informant's phone call in paragraph 8 of the affidavit should be May 29, not May 28.[3] Officer McMillan testified that none of the errors were intentionally false or reckless in nature.

Officer McMillan also testified that while at Ms. Moore's residence a woman quickly came into Ms. Moore's back door in a panicked state. The woman explained to Officer McMillan that a Vice Lords gang member pointed a gun at a rival gang member. Because he had turned his back to Ms. Moore to respond to the woman, he was uncertain as to whether Ms. Moore was still in the room or heard the conversation. He is sure, however, that Ms. Moore was still in the residence. After leaving Ms. Moore's residence and attempting to verify the woman's story, Officer McMillan claims

---

[3] As noted by the magistrate judge, Officer McMillan was not questioned about the date and time of the informant's phone call noted in paragraph 7 of the affidavit.

he did not come across any information supporting her averments.

At the hearing, Defendant introduced an email from Officer Martin Penny informing other officers to be careful due to recent incidents involving gang activity. Officer Penny was involved in the investigation of the shootings at East Lake Courts, the first of which occurred at approximately 11:59 p.m. on May 27 (Def.'s Ex. 6). No one was injured. The second shooting incident occurred at approximately 6:17 a.m. A witness stated that the suspect had been involved in the first incident as well. When the suspect was caught, he spontaneously uttered, "I'm GD . . . I'm a Gangster Disciple. We at war with APD (Athens Park Bloods) . . . ." (*id.*). The incident reports filed by Officer Penny align with the information included in the email. Neither his email nor the incident reports mention the Vice Lords. The magistrate judge found it was likely that the event that occurred near midnight on May 27 was the same event Officer McMillan was referring to in paragraph 7 of his affidavit even though there was no mention of any shell casings in Officer Penny's email or the incident reports. Officer McMillan testified he vaguely heard about the second shooting incident from other officers but did not learn the details until he received Officer Penny's email.

With respect to paragraph 8, Officer McMillan testified the informant told him all of the information that he included in the affidavit as well as the fact that the individuals in the residence were smoking marijuana. Officer McMillan claims he accidentally forgot to include the marijuana part, however, because he was focused more on the firearms issue.

## B.     Procedural Background

Defendant was indicted by a federal grand jury on June 26, 2012, and charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Defendant's motion to

suppress is pending.

## II.     STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C). However, *de novo* review does not require the district court rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980). The magistrate judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting her in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). The magistrate judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

## III.     DISCUSSION

Defendant raises a number of objections to the magistrate judge's R&R. His overarching objection is that the magistrate judge erred in concluding Defendant failed to show by a preponderance of the evidence that the affidavit contained a material false statement--either intentionally or with reckless disregard for the truth--or that, even if such statement had been present and was stricken, probable cause was lacking to support the search warrant. To advance this objection, Defendant contends Officer McMillan was not a credible witness. He also objects to the magistrate judge's findings with respect to paragraphs 6, 7, 8, and 9 of the affidavit, along with the final paragraph of the affidavit. Finally, with respect to the motion to suppress, he objects to the magistrate judge's findings that the search warrant was properly issued. The Court will address each

issue in turn after discussing the relevant law.

### A.     Applicable Law

A court may hold a *Franks* hearing at the defendant's request "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). In explaining the burden carried by the defendant, the Sixth Circuit has stated the following:

> A defendant who challenges the veracity of statements made in an affidavit that form the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth. He must accompany his allegations with an offer of proof. Moreover, he should also provide supporting affidavits or explain their absence. If he meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause.

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990) (citations omitted).

If the defendant is granted a *Franks* hearing, he must establish "the allegation of perjury or reckless disregard" by a preponderance of the evidence. *Franks*, 438 U.S. at 156. Affidavits used to support search warrants, however, are generally presumed to be valid. *Id.* at 171. Moreover, the defendant should allege "deliberate falsity or reckless disregard [on the part] of the affiant, not of any nongovernmental informant." *Id.* at 171; *United States v. Stuart*, 507 F.3d 391, 396 (6th Cir. 2007). If the defendant makes the requisite showing and "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause," the search warrant  must be voided and the evidence seized as a result of the warrant's execution must be suppressed. *Franks*, 438 U.S. at 156.

8

Here, the magistrate judge held a *Franks* hearing based on the preliminary submissions made by Defendant. However, after considering the evidence presented at the evidentiary hearing, the magistrate judge concluded Defendant failed to establish by a preponderance of the evidence that Officer McMillan deliberately or recklessly made false statements in the affidavit. Moreover, she found that, even if the alleged false statements were removed, the affidavit still established probable cause. Thus, the search warrant was valid and there was no need to suppress any evidence seized as a result of the warrant being executed. As will be explained below, the Court agrees with the magistrate judge's findings and conclusions.

**B.     Officer McMillan's Credibility**

Because several of Defendant's objections pertain to Officer McMillan's credibility, the Court will address this issue at the outset. At various points in his brief, Defendant argues the Court should not credit Officer McMillan's testimony given the mistakes "in memory and fact" made by Officer McMillan. For example, Defendant notes Officer McMillan erred when he listed the dates in paragraphs 6, 7, and 8 in the affidavit. Defendant also challenges Officer McMillan's recollection of the facts with respect to the disorder call referenced in paragraph 6, as well as his conversations with the informant referenced in paragraphs 7 and 8. Because Defendant contends Officer McMillan made mistakes with respect to these matters, he argues Officer McMillan's credibility as a whole should be called into question.

First, the Court observes that, while some of the errors noted above can be verified, most of Defendant's objections are not supported by the evidence before the Court. The main errors in the affidavit are the incorrect dates. In paragraphs 6 and 7, Officer McMillan wrote May 27, 2012, rather than May 28. In paragraph 8, he wrote May 28, instead of May 29. The Government admits the dates

were off by one day but avers as does the magistrate judge that the mistakes gave Officer McMillan

no clear advantage and were not material to the probable cause determination. At the evidentiary

hearing, Officer McMillan acknowledged the incorrect dates listed in the affidavit and stated they

occurred because he was busy and in a rush that day. He explained the mistakes were not intentional

or reckless in nature. Defendant has not shown that those statements were the result of a deliberate

or reckless disregard for the truth. *See United States v. Mick*, 263 F.3d 553, 564 (6th Cir. 2001)

(noting the officer's confusion about the dates listed in the affidavit did not "rise to the level of

deliberate or reckless misstatements as required by *Franks*"). Moreover, based on the information

in the record, the Court agrees with the magistrate judge's finding in the R&R that Officer

McMillan's misstatement of the dates is immaterial. *See United States v. Hill*, 142 F.3d 305, 310-11

(6th Cir. 1998) (concluding the probable cause finding was supported despite date errors in the

affidavit). While the dates may have been incorrect, the facts in the affidavit still provide probable

cause for a state judicial officer to issue a search warrant for firearms.

Although the Court will explain in greater detail later in this memorandum why Defendant's

other arguments lack merit, the Court will briefly discuss why it has concluded Officer McMillan

was a credible witness. As noted by the magistrate judge, Officer McMillan's testimony at the

*Franks* hearing was consistent was the statements included in the affidavit. For instance, while

Defendant may disagree that an unknown woman ran into Ms. Moore's apartment and reported on

Vice Lords gang activity, Officer McMillan's testimony on the stand mirrored what he included in

the affidavit. The same is true for many of Defendant's other objections. The magistrate judge found

Officer McMillan to be a completely credible witness after hearing his testimony and observing his

demeanor, a perspective that this Court lacks. Under these circumstances and taking into account

all of the evidence in the record, the Court believes it is appropriate to "defer to the credibility finding by the magistrate judge who had an opportunity to evaluate the demeanor and consistency of [Officer McMillan's] testimony." *See United States v. Lowe*, No. 3:09-CR-110, 2010 WL 1491417, at *1 (E.D. Tenn. Apr. 12, 2010) (citing *United States v. Simmons*, 174 F. App'x 913 (6th Cir. 2006)).[4]

## C.    The Affidavit

### 1. Paragraph 6

Moving on to the contents of the affidavit, Defendant argues the magistrate judge erred when she concluded Defendant did not prove paragraph 6 contained false statements that should be stricken from the affidavit. Defendant contends all of the information--with the exception of the statement that Officer McMillan was on a disorder call--should be removed. Defendant also objects to the magistrate judge's alternative finding that probable cause would still exist to issue the search warrant even if the entire paragraph had been stricken.

The Court has already explained why the date error in paragraph 6 by itself is immaterial to the finding of probable cause. Defendant, however, also attempts to poke holes in Officer McMillan's testimony by speculating as to the improbability of the events as reported by Officer

---

[4] For the first time in his objections to the R&R, Defendant attempts to argue Officer McMillan's credibility must be evaluated given his status as a police officer because "there is a 'widespread belief that testilying is a frequent occurrence' throughout the nation" (Court File No. 42 at 9 (citing Gabriel J. Chin & Scott C. Wells, *The "Blue Wall of Silence" as Evidence of Bias and Motive to Lie: A New Approach to Police Perjury*, 59 U. Pitt. L. Rev. 233, 236-37 (Winter 1998)). The Court notes Defendant had not previously raised this argument despite being asked at the evidentiary hearing by the magistrate judge if he was attempting to argue that the police officer was committing perjury on the stand. Therefore, Defendant has effectively waived argument on this issue. However, even if the Court were to consider this line of argument, it concludes Defendant still has not shown the specific officer in this case--that is, Officer McMillan--committed perjury or was anything other than a credible witness based on the facts in the record.

11

McMillan. For example, with respect to the statement in paragraph 6 that an unknown female ran inside the residence, Defendant questions how the woman knew Officer McMillan was in Ms. Moore's apartment. Defendant, however, acknowledges no evidence was offered on this issue by either side. Thus, any attempts to explain why the woman came to Ms. Moore's apartment and whether she knew Officer McMillan was present before she entered would be purely speculative, which is not the Court's role at this stage when reviewing the evidence presented by the parties at a *Franks* hearing.

Defendant also challenges other aspects of Officer McMillan's account of the disorder call. For instance, he questions Officer McMillan's characterization at the hearing that the woman entered in a panicked state and contends this is illogical given that the incident occurred approximately eighteen hours earlier. He also claims Officer McMillan's account does not make sense because, according to Investigator DiPillo, Ms. Moore did not see the woman enter her apartment or hear her tell Officer McMillan about the Vice Lords' gang activity.

While these are not insignificant questions, the Court is not convinced the substance of paragraph 6 should be stricken from the affidavit on these grounds. First, the Court reminds Defendant that Officer McMillan was found to be a credible witness at the *Franks* hearing. He testified under oath that while he was in Ms. Moore's apartment a woman entered in a panicked state and told him she saw a Vice Lords gang member point a gun at a rival gang member. The Court, on the other hand, lacks the benefit of similar testimony from either Ms. Moore or the other woman. Mr. DiPillo, who was also found to be a credible witness, claims Ms. Moore told him she did not see a woman run into her house nor did she or the other female who was already at the residence make any statement about the Vice Lords. With that said, because Officer McMillan turned to face

12

the opposite direction to address the other woman, it is unknown whether Ms. Moore was even still in the room to hear or see the encounter. Moreover, Mr. DiPillo acknowledged the possibility that the other known female at the apartment may have been the person who spoke to Officer McMillan and that Ms. Moore simply was unaware of the conversation. Post-*Franks* hearing, this Court is trying to determine whether Defendant has shown by a preponderance of the evidence that Officer McMillan intentionally made a false statement or did so with a reckless disregard for the truth. Here, none of Defendant's objections establishes that paragraph 6 contains any false statements.

Finally, Defendant questions why Officer McMillan failed to mention the unknown woman's "tip" about the Vice Lords gang member in his disorder report and questions the woman's credibility. This Court has already made clear that Officer McMillan certainly could have done a better job recording the details relevant to the disorder call. As Mr. DiPillo explained at the hearing, the incident report for the disorder call listed an incorrect date and address and failed to mention anything about the woman running into the residence with information about Vice Lords gang activity. There is much to be desired with respect to what could have or should have been included in the disorder report. However, the issue before the Court is whether the "affidavit" contained a material false statement. And as noted by the magistrate judge, "Defendant did not demonstrate paragraph 6 contains a material false statement--just an incorrect date" (Court File No. 41 at 10). At most, Defendant has shown Officer McMillan was rushed and careless when he reported the incident, not that he intentionally included false statements in the affidavit or acted with a reckless disregard for the truth.

The Court further notes that the issue at the *Franks* hearing was whether Officer McMillan made a deliberate or reckless false statement, not a nongovernmental informant or anonymous

tipster. *See Franks*, 438 U.S. at 171. With that said, to the extent Defendant is arguing Officer McMillan knowingly relied upon the testimony of someone who was known to be unreliable, the Court concludes this does not affect its overall decision. As noted by the magistrate judge, even if the Court was to strike the substance of the woman's statement or even the entire paragraph, the totality of the evidence in the remainder of the affidavit establishes probable cause for issuing a search warrant for firearms.

### 2. Paragraph 7

Defendant argues the magistrate judge erred by finding he had not proven any of the statements in paragraph 7 were false. Defendant claims the evidence in the record does not corroborate Officer McMillan's statement in the affidavit about the informant's phone call. Defendant, however, acknowledges that neither he nor the Government had Officer McMillan identify the specific phone call in the records though the Government did point out that Officer McMillan received several calls on May 27 and May 28. Notably, Defendant bears the burden of establishing the affidavit contains a material false statement. At the hearing, Officer McMillan stated he received the call from the informant and, although Defendant may not be able to point out the exact call from Officer McMillan's phone records because he failed to inquire, neither can he show the call was not made.

Defendant also contends that, even if Officer McMillan received the phone call, the caller identified the wrong gang and his testimony was therefore unreliable. Specifically, Defendant notes the informant told Officer McMillan the Vice Lords were shooting at rival gang members. However, in light of Officer Penny's email and the incident reports, Defendant contends the incident the informant was most likely referring to was the shooting on May 27 at 11:59 p.m. Apparently, the

14

suspect in the first shooting was arrested following a second shooting the morning of May 28 and stated he was a Gangster Disciple and that his gang was at war with Athens Park Bloods. Given the discrepancy in gang names, Defendant argues the information provided in the phone call was untrue and should be stricken. The Court notes, however, that Officer McMillan testified the informant mentioned the Vice Lords gang. Defendant's allegations only attack the credibility of the informant not Officer McMillan, which is insufficient to show Officer McMillan deliberately or recklessly made a false statement in the affidavit.

### 3. Paragraphs 8 and 9

Defendant also objects to the magistrate judge's findings with respect to paragraphs 8 and 9. With respect to paragraph 8, Defendant reiterates his previous objections as they pertain to date and time errors that ultimately do not affect the probable cause finding. Defendant also challenges the fact that Officer McMillan relied upon an informant's statement that Defendant believes incorrectly implicates the Vice Lords. According to the affidavit, a reliable informant called Officer McMillan and told him that he saw several guns inside a residence and that one of the guns had been used in the prior call about gun shots being fired. The informant claimed the person at issue was the leader of the Vice Lords and other Vice Lords gang members were at the residence. Defendant contends, however, that, the "prior call" incident was the 11:59 p.m. shooting on May 27 that apparently involved a Gangster Disciple whose gang was at war with the Athens Park Bloods. Even assuming Defendant's averments are true, Defendant again has not shown Officer McMillan intentionally or recklessly provided false statements. This is further supported by the fact that, in paragraph 9, Officer McMillan verifies the reliability of this informant by noting he has used him in the past to obtain information for warrants that ultimately led to several felony drug and weapon

15

arrests. Thus, Defendant has failed to show Officer McMillan intentionally made a false statement or demonstrated a reckless disregard for the truth by relying upon an unreliable informant.

### 6. Final Paragraph

Defendant claims the last paragraph of the affidavit only requests a warrant to search for drugs. He argues there was no probable cause to search for drugs and that the state judge's failure to note this calls into question his ability to act as a neutral and detached decisionmaker. The parties do not dispute the fact that the affidavit does not provide probable cause to search for a drug-related crime.[5] However, even if the specific request for drug evidence was stricken, it does not change the fact that the state judicial officer did not err based on all of the evidence discussed above--especially the information contained in paragraphs 7 and 8 about the shooting--in concluding the affidavit provided the requisite probable cause to issue a search warrant for weapons. Moreover, Defendant again has failed to identify an intentional or reckless false statement on the part of Officer McMillan. Accordingly, the Court concludes this argument lacks merit.

### D.    The Search Warrant

Finally, because the magistrate judge also treated Defendant's motion as a motion to suppress, Defendant argues the evidence should be suppressed because the search warrant was improperly issued. Defendant contends the state magistrate judge must perform his "neutral and detached function and not serve merely as a rubber stamp for police." *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000), and that did not occur here. He points out that the search warrant is almost entirely about drugs yet lacks probable cause to search for drugs. On the other hand, he

---

[5] At the hearing, Officer McMillan explained he had intended to include information from the informant that the parties were inside the residence using marijuana but he forgot to include it. As a result, the parties agree probable cause was lacking with respect to the marijuana allegation.

16

argues the search warrant barely mentions firearms and the affidavit does not ask for permission to search for firearms.

In *King*, however, the United States Court of Appeals for the Sixth Circuit set out more broadly what a court should consider when reviewing a state judicial officer's determination of probable cause. In particular, the Sixth Circuit explained a court "must determine whether, under a totality of the circumstances, the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing." *King*, 227 F.3d at 732 (quoting *United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir. 1994)) (internal quotation marks omitted). Here, as has already been stated, the Government concedes the affidavit did not support a probable cause finding to search for drug evidence. However, at issue in this case is the evidence pertaining to the firearms-related crime. Although the affidavit does not expressly ask for permission to search for firearms, the Court notes that paragraph 5 does state "[t]he crime being investigated is the possession for resale of schedule VI controlled substances to wit: marijuana in and unlawful possession of firearms in Hamilton County, Tennessee" (Def.'s Ex. 1). Moreover, the affidavit provides several facts as detailed above that support a probable cause finding to search for firearms, including the statements about the shooting and the presence of guns at the residence of an individual who may have been involved. As noted by the magistrate judge, this information was verified by a reliable informant who has provided information to Officer McMillan in the past. Considering the totality of the evidence, the state judicial officer had a substantial basis for concluding probable cause existed to authorize a search for firearms, even if probable cause to search for drugs was lacking. Accordingly, Defendant's claims that the state judicial officer erred in issuing the search warrant for firearms is unfounded and the Court agrees with the magistrate judge that Defendant's motion to suppress

17

should be denied.

## IV.     CONCLUSION

For the foregoing reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No.

41) and **DENY** Defendant's motion to suppress (Court File No. 36).

An Order shall enter.


<u>**/s/**</u>_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**